IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ZO SKIN HEALTH, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SKINCARE MARKET, INC., <br><br> Defendant. | 8:21-CV-3196 <br><br> **MEMORANDUM AND ORDER** |

## I. INTRODUCTION

ZO Skin Health, Inc., ("ZOSH") has sued Skincare Market, Inc., for various claims arising from Skincare Market allegedly selling products bearing ZOSH's trademarks without ZOSH's permission. Before the Court is Skincare Market's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Filing 8. Alternatively, Skincare Market requests that the Court transfer this case to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a). Filing 8 at 1. For the reasons stated herein, the Court finds that it has personal jurisdiction over Skincare Market. However, the Court concludes that, for the convenience of the parties and witnesses and in the interest of justice, transfer to the United States District Court for the Central District of California is warranted. The Court therefore denies Skincare Market's Motion to dismiss insofar as it argues the Court lacks personal jurisdiction and grants it insofar as it requests transfer under 28 U.S.C. § 1404(a).

## II. BACKGROUND

ZOSH is a California corporation with its main distribution center in Omaha, Nebraska. Filing 1 at 1. ZOSH creates, markets, and sells "cosmeceutical"[1] products. Filing 1 at 3. Because ZOSH's products are medical grade, it sells its products exclusively through a network of licensed physicians. Filing 1 at 3. The agreements ZOSH has with these licensed physicians allow it to ensure quality control and consumer safety. Filing 1 at 5–7. ZOSH forbids distributors and the physicians from selling its products on third-party platforms and instead requires consumers to visit the location of one of ZOSH's Authorized Account Customers to receive a consultation. Filing 1 at 5, 8. ZOSH prohibits the Authorized Account Customers from selling its products to third parties who intend to resell them. Filing 1 at 12. Several of ZOSH's products are trademarked with the United States Patent and Trademark Office. Filing 1 at 4.

While tracking its online sales, ZOSH discovered that Skincare Market was selling products bearing ZOSH's trademarks on its website. Filing 1 at 9. Skincare Market is a California corporation with its principal place of business in California. Filing 1 at 1; Filing 8-1 at 1. Skincare Market does not have any offices or employees in Nebraska. Filing 8-1 at 1. ZOSH has not authorized Skincare Market to sell ZOSH's products through its Authorized Account Customer system. Filing 1 at 9. According to ZOSH, Skincare Market selling its products prevents it from ensuring quality control and consumer safety. Filing 1 at 10. ZOSH also claims that the unauthorized sale of its products causes customer confusion because consumers believe they are purchasing genuine ZOSH products when, in fact, they are not. Filing 1 at 10. Skincare Market

---

[1] The cosmetic industry uses the word "cosmeceutical" to refer to cosmetic products that have medicinal or drug-like benefits. "*Cosmeceutical*," U.S. Food & Drug Administration, https://www.fda.gov/cosmetics/cosmetics-labeling-claims/cosmeceutical (last visited Jan. 7, 2022).

admits that, since December of 2020, it has made fifteen sales of ZOSH products to Nebraska residents. Filing 8-1 at 2.

On September 24, 2021, ZOSH sued Skincare Market. Filing 1. ZOSH brought claims for trademark infringement, false advertising, unfair competition, trademark dilution, intentional interference with contractual relations under California and Nebraska Law, unfair competition under the California Business and Professions Code, common-law unfair competition, common-law trademark infringement, and violation of the Racketeer Influenced and Corrupt Organizations Act. Filing 1 at 14–36. Skincare Market filed its Motion to Dismiss on October 22, 2021, arguing that the Court lacks personal jurisdiction or, alternatively, that the Court should transfer this suit to the Central District of California. Filing 8; Filing 9 at 10.

### III. ANALYSIS

#### A. Standard of Review

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). To defeat a motion challenging personal jurisdiction, a plaintiff must make "a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* Although the evidentiary showing at the prima facie stage is minimal, "the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). The Court must view the evidence "in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *Deloney v. Chase*, 755 F. App'x 592, 595 (8th Cir. 2018) (quoting *K-V Pharm*, 648 F.3d at 592). "[H]owever, the party seeking to

establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath*, 760 F.3d at 820.

### B. The Court Has Specific Personal Jurisdiction over Skincare Market

Skincare Market argues that the fifteen sales of ZOSH products it has made to Nebraska residents since December of 2020 are insufficient to confer specific personal jurisdiction. Filing 9 at 7–8. It further contends that Nebraska has little interest in a lawsuit between two California corporations and that it is inconvenient for both parties to litigate this case in Nebraska. Filing 9 at 7–8. In response, ZOSH asserts that personal jurisdiction exists because Skincare Market sold and shipped ZOSH products, in violation of trademark law, to Nebraska residents through its website, and that Nebraska has an interest in preventing Skincare Market from unlawfully selling ZOSH products to its residents.[2] Filing 12 at 5–6. The Court finds that it has specific personal jurisdiction over Skincare Market because its website sells products to residents in Nebraska and it made fifteen shipments of ZOSH products to Nebraska residents.

The forum state's long-arm statute and the Due Process Clause must permit the exercise of personal jurisdiction. *K-V Pharm.*, 648 F.3d at 592. Nebraska's long-arm statute allows jurisdiction to the extent permitted by the United States Constitution; therefore, the only issue is whether exercising personal jurisdiction over Skincare Market comports with due process. *See Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003) (noting that Nebraska's long-arm

---

[2] ZOSH also argues that the fact that its main distribution center is in Nebraska supports finding personal jurisdiction exists in this case. Filing 12 at 4–5, 7. According to ZOSH, virtually all its products are shipped from this distribution center. However, ZOSH alleges that Skincare Market received ZOSH products from an unknown third-party seller who then sold the products directly to Skincare Market, and has not alleged that Skincare Market was even aware of the existence of this distribution center. Thus, the Court is skeptical that this detail is relevant to the personal-jurisdiction analysis since "the defendant's relationship with the forum state 'must arise out of contacts that the defendant himself created with the forum state.'" *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021) (quoting *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020)). Given that the Court considers the fifteen sales of ZOSH products sufficient to find personal jurisdiction, it need not consider whether the location of ZOSH's distribution center also weighs in favor of finding personal jurisdiction over Skincare Market.

statute, Neb. Rev. Stat. § 25-536, permits jurisdiction to the extent permitted by the Constitution and thus proceeding to the Due Process analysis); *see also* Neb. Rev. Stat. § 25-536(2).

"Due process mandates that jurisdiction be exercised only if defendant has sufficient 'minimum contacts' with the forum state, such that summoning the defendant to the forum state would not offend 'traditional notions of fair play and substantial justice.'" *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The defendant must have "engaged in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Burger King*, 471 U.S. at 475). A defendant purposefully avails itself of the privilege of conducting activities within the forum state when the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Moreover, for a state to have personal jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Eighth Circuit requires courts to consider five factors to determine if a defendant has sufficient minimum contacts with a forum state. *See Deloney v. Chase*, 755 F. App'x 592, 596 (8th Cir. 2018). These factors are:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

*K-V Pharm*, 648 F.3d at 592. The first three factors are the primary factors, while the remaining two are secondary. *Id.* at 592–93.

When a plaintiff asserts that the defendant's website provides a basis for personal jurisdiction, as ZOSH does in this case, courts in the Eighth Circuit also look to the sliding-scale approach enunciated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), in determining whether personal jurisdiction exists.[3] *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003) ("We agree with our sister circuits that the Zippo model is an appropriate approach in cases of specific jurisdiction-i.e., ones in which we need only find 'minimum contacts.'"). Under *Zippo*, personal jurisdiction is proper when the defendant enters into contracts with the forum state's residents that involve "the knowing and repeated transmission of computer files over the Internet." *Id.* Passive websites that do "little more than make information available to those who are interested" occupy the other end of the spectrum where personal jurisdiction is improper. *Id.* In the middle are interactive web sites where users "can exchange information with the host computer." *Id.* For websites in this middle ground, "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site" dictate whether jurisdiction is proper. *Id.*

The Court begins with the contacts produced by Skincare Market's website. According to ZOSH, Skincare Market's website advertises and sells products bearing ZOSH's trademarks and

---

[3] Courts in the Eighth Circuit also use the *Calder* effects test to determine if personal jurisdiction exists in trademark cases. *See, e.g.*, *Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d 951, 959 (E.D. Mo. 2001) (applying the *Calder* effects test in a trademark case and finding personal jurisdiction). The *Calder* effects test provides for personal jurisdiction when a defendant's tortious acts were intentional, the actions were uniquely or expressly aimed at the forum state, and the acts "caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Johnson*, 614 F.3d at 796 (alternation in original) (quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)). The Eighth Circuit has recognized that there are two approaches to determining where the economic injury for trademark infringement, a tort, occurs. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388–89 (8th Cir. 1991) (noting the two different approaches to determining the site of economic injury in trademark cases and declining to choose between them). The economic injury either occurs where the defendant sells the plaintiff's product to a deceived customer or where the plaintiff has its principal place of business. *Id.* Depending on the approach this Court uses, it is possible the *Calder* effects test is satisfied in this case since ZOSH alleges that Skincare Market intentionally infringes on its trademark and Skincare Market admits it sold ZOSH products to Nebraska residents. However, the *Calder* effects test is "merely . . . an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson*, 614 F.3d at 796–97. Therefore, the Court primarily relies on the minimum-contacts test to analyze personal jurisdiction in this case.

requires purchasers "to enter payment information and their mailing address in order to purchase a product and have it shipped to them." Filing 13-1 at 2. Therefore, Skincare Market's website falls within the middle ground of the *Zippo* framework. *See Lakin*, 348 F.3d at 712 (holding that a website which allowed consumers to submit applications for home-equity loans and lines of credit fell into *Zippo*'s middle category); *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004) (finding that a website that consisted primarily of single point-of-sale transactions and allowed visitors to establish an online account fell into *Zippo*'s middle category). Turning to the level of interactivity and the nature of the information exchanged on the website, the Court notes that the interactivity of Skincare Market's website is minimal. The only interaction between the website's users and Skincare Market are the products Skincare Market passively promotes on their website, *see Zippo*, 952 F. Supp. at 1119 (stating that merely "mak[ing] information available" is insufficient to confer personal jurisdiction); the user entering his or her payment and shipping information into the website; and Skincare Market ultimately shipping a product to a consumer. *See Allied Ins. Co. of Am. v. JPaulJones L.P.*, 491 F. Supp. 3d 472, 477 (E.D. Mo. 2020) (finding that there was no personal jurisdiction when the defendant's website allowed users to purchase items promoted on the website and ship them to the forum state). Moreover, although the information exchanged between the user and Skincare Market facilitates a commercial transaction, claiming that this exchange is the type of "continuing, back-and-forth relationship" contemplated as creating jurisdiction under the *Zippo* framework is overstated. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142 (4th Cir. 2020) (holding that an exchange of information on a website that merely facilitated the making of a "one-off hotel reservation" was insufficient to establish personal jurisdiction under the *Zippo* analysis).

Although Skincare Market's website itself may be insufficient to establish personal jurisdiction, Skincare Market has admitted that it made fifteen sales of ZOSH products to Nebraska residents through its website since December of 2020. Filing 8-1 at 2. Fifteen sales of products through Skincare Market's interactive website, combined with the contacts produced by the website, are enough for Skincare Market to "reasonably anticipate being haled" into a Nebraska court. *Burger King*, 471 U.S. at 474. To begin, the first two factors in the Eighth Circuit analysis—the nature, quality, and quantity of the contacts—weigh in favor of personal jurisdiction. Not only does Skincare Market's website allow Nebraska residents to view and purchase the allegedly infringing ZOSH products, Skincare Market also made fifteen actual sales of ZOSH products to Nebraska residents. Having sold products via its website to Nebraska residents and shipped them to Nebraska, Skincare Market would have reasonably foreseen the possibility of litigation in this state. Other courts in this Circuit have found fewer than fifteen sales of an allegedly infringing product into the forum state sufficient for personal-jurisdiction purposes. *See Furminator, Inc. v. Wahba*, No. 410CV01941AGF, 2011 WL 3847390, at *4 (E.D. Mo. Aug. 29, 2011) (finding personal jurisdiction when the defendants sold one product to a resident of the forum state which allegedly violated the trademark of a company located in the forum state); *3M Co. v. Icuiti Corp.*, No. 05-2945 ADM/RLE, 2006 WL 1579816, at *2 (D. Minn. June 1, 2006) (finding that seven sales of an allegedly infringing product to forum state's residents was sufficient for personal jurisdiction).

Comparing this case to the Eighth Circuit's case in *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010), is instructive. In *Johnson*, the plaintiffs alleged that the defendant infringed upon their trademark by using it on the defendant's website. *Id.* at 795, 797. Although the defendant's website was interactive, there was no evidence that the defendant "engaged in any transaction or exchange

8

of information with [a resident of the forum state] via [the defendant's website], or that a [resident of the forum state] ever accessed the website." *Id.* at 797. The Eighth Circuit declined to confer personal jurisdiction solely based on the mere possibility a resident of the forum state had contact with the defendant through the defendant's website. *Id.* In contrast, here, Nebraska residents have contacted Skincare Market via its website and Skincare Market in return has made fifteen shipments of ZOSH products to Nebraska. What was missing in *Johnson* is present here. The nature, quality, and quantity of Skincare Market's contacts with Nebraska weigh in favor of finding personal jurisdiction.

As to the third factor—the relationship of the cause of action to Skincare Market's contacts—the advertising and sale of allegedly infringing products into Nebraska is related to ZOSH's causes of action. Two of ZOSH's causes of action are trademark infringement under 15 U.S.C. § 1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B). Under § 1125(a)(1)(A), ZOSH must show that Skincare Market's "use of [its] marks was 'likely to cause confusion' as to the origin of [its] products and services, or whether [Skincare Market is] affiliated with [ZOSH]." *Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005) (quoting 15 U.S.C. § 1125(a)(1)(A)). Liability under § 1125(a)(1)(B) arises when the defendant made "false statements of fact about its own product." *Id.* Here, ZOSH alleges that Skincare Market's use of its trademark to make sales causes customer confusion and falsely implies that the products sold on Skincare Market's website come with ZOSH's warranty. Skincare Market advertising and selling ZOSH's products are related to these causes of action. Thus, the third factor favors exercising jurisdiction.

The fourth and fifth factors, which address the interests of the forum state in providing a forum for its resident and the convenience to the parties of litigating in the forum, weigh against

personal jurisdiction. Neither party is a resident of Nebraska, and Skincare Market has averred that all its employees live in California and that all individuals with knowledge of the facts alleged in ZOSH's complaint reside in California. But given that these are secondary factors, they do not tip the scales against finding the existence of personal jurisdiction. *See Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983) ("[T]he last two factors are said to be of secondary importance and not determinative.").

Weighing all the factors together, the Court finds that it has personal jurisdiction over Skincare Market. Skincare Market uses its website, which is accessible to Nebraskans, to advertise and sell ZOSH products in an alleged violation of ZOSH's trademark. Through its website, Skincare Market has made fifteen sales of ZOSH products to Nebraska residents since December of 2020 and shipped these sales into Nebraska. Therefore, Skincare Market has sufficient minimum contacts with Nebraska such that personal jurisdiction comports with due process.

### C. The Court Finds Transfer Is Warranted

As an alternative to dismissal, Skincare Market has "request[ed] that the Court transfer this case to the United States District Court for the District of Central California as permitted by 28 U.S. Code § 1404(a)."[4] Filing 8 at 1. ZOSH responds by arguing that venue is proper in Nebraska under 28 U.S.C. § 1391(b), Filing 12 at 12, although it is unclear why ZOSH believes that fact precludes transfer under § 1404(a). The Court concludes that transfer under § 1404 is warranted.

---

[4] Skincare Market also references the forum-non-conveniens doctrine in its brief as a basis for transferring this case to the District of Central California. Filing 9 at 10–11. However, "a federal district court's power to dismiss a case properly within its jurisdiction under the common-law doctrine of forum non conveniens has been substantially eliminated by the federal transfer of venue statute, 28 U.S.C. § 1404(a)." *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 783 (8th Cir. 2009). When "transfer to another federal district court is possible," dismissal under forum non conveniens is unavailable. *Id.* (quoting *Cowan v. Ford Motor Co.*, 713 F.2d 100, 103 (1983)). Therefore, the Court applies the transfer of venue statute, 28 U.S.C. § 1404(a), to Skincare Market's request.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."[5] 28 U.S.C. § 1404(a)). To begin, because Skincare Market resides in the Central District of California, this action could have been brought there initially. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . ."). Therefore, the only issue is whether the Court should transfer "[f]or the convenience of parties and witnesses [and] in the interest of justice." *Id.* at § 1404(a).

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). But this deference "is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010). Moreover, "district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *Id.* at 912. When assessing convenience, courts consider

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra Int'l*, 119 F.3d at 696.

That the Central District of California is a more convenient forum is not seriously disputed. All of Skincare Market's employees live in Los Angeles, California, and all individuals Skincare

---

[5] "A case may be transferred under § 1404(a) only when venue is proper in the transferor and transferee forums." *Steen v. Murray*, 770 F.3d 698, 701 (2014). Because the Court has personal jurisdiction over Skincare Market, venue in this Court is proper. *See* 28 U.S.C. § 1391(b)(1), (c)(2); *Dakota Indus.*, 946 F.2d at 1392 ("If personal jurisdiction exists at the commencement of the action, then venue is proper under 28 U.S.C. § 1391(b) . . . .").

11

Market is aware of having case-relevant knowledge reside in California. Filing 8-1 at 2. Both parties are incorporated and have their principal place of business in California. Filing 1 at 1; *see* In re Apple, 602 F.3d at 913 (noting that where a corporation is located is likely the location of "many potential witnesses" and "relevant documentation"). ZOSH provides no reason for the Court to believe that Nebraska is a more convenient forum than the Central District of California or that the Central District of California is inconvenient.[6] In fact, the convenience factors support that Nebraska is an inconvenient forum in which to litigate this case. Thus, the convenience to the parties and witnesses weigh heavily in favor of transfer.

> Turning toward whether "the interests of justice" support transfer, the Court considers
>
> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

Terra Int'l, 119 F.3d at 696. Given that ZOSH has not provided any basis for why Nebraska is a convenient forum, and the Court has concluded that Nebraska is not a convenient forum, ZOSH's choice of forum is entitled to little weight. *See* In re Apple, 602 F.3d at 913 (noting that the deference to the plaintiff's choice of forum "is based on an assumption that the plaintiff's choice will be a convenient one"). Moreover, the advantages to having local courts determine questions of local law is balanced by the fact that ZOSH brings claims under both California law and Nebraska law. Filing 1 at 25–32. The other factors appear to be neutral.

---

[6] The Court previously concluded that the shipments of ZOSH products into Nebraska weighed in favor of finding personal jurisdiction over Skincare Market. However, this does not support that Nebraska is a more convenient forum than California. This detail does not mean that the evidence for ZOSH's claims is more likely to be located in Nebraska rather than in California, where both parties are located. Additionally, although ZOSH points out that it has a warehouse in Nebraska, it does explain how this fact makes Nebraska a more convenient forum than California. Moreover, the Court noted that it is skeptical that ZOSH having a warehouse located in Nebraska to the personal jurisdiction analysis, further casting doubt that the warehouse location weighs against transferring this case to California.

Given that "§ 1404(a) places convenience and the interests of justice on equal footing and says nothing about 'the relative weight to be accorded' to each individual case-specific factor," *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 8:17CV478, 2018 WL 6427872, at *6 (D. Neb. Dec. 6, 2018) (quoting C*offey v. Van Dorn Iron Works*, 796 F.2d 217, 223 n.3 (7th Cir. 1986)), the convenience to the parties and witnesses overwhelms any reason not to transfer provided by the "interests of justice" factors. Therefore, the Court will transfer this action to the United States District Court of the Central District of California under 28 U.S.C. § 1404(a).

## IV. CONCLUSION

Although ZOSH has demonstrated that the Court has personal jurisdiction over Skincare Market, the Court concludes that for the convenience of the parties and witnesses, this case must be transferred to the United States District Court for the Central District of California. Accordingly,

IT IS ORDERED:

1. Skincare Market's Motion to Dismiss, Filing 8, is granted insofar as it requests transfer and denied insofar as it moves to dismiss for lack of personal jurisdiction; and

2. The Court orders that this case be transferred to the United States District Court of the Central District of California under 28 U.S.C. § 1404(a).

Dated this 20th day of January, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge